UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ELIJAH JOVANN WHEELER-WATSON,<br><br>    Defendant. | Case No. 3:22-MJ-03245-KAR<br>(2:19-cr-150-1 (D. Vt.)) |

MEMORANDUM AND ORDER

I.    <u>Relevant background</u>

On December 21, 2021, defendant Elijah Jovann Wheeler-Watson (Defendant) was convicted on one count of possession with intent to distribute cocaine base and heroin by a judgment entered by the United States District Court for the District of Vermont. He was sentenced to 30 months of incarceration and four years of supervised release. He was released to probation on December 21, 2021. The Probation Department of the United States District Court for the District of Massachusetts accepted responsibility for courtesy supervision because Defendant had verified ties to Massachusetts.

On or around March 21, 2022, the Probation Department of Vermont filed a Petition on Probation and Supervised Release (Petition) alleging that Defendant had violated conditions of his supervised release as follows:

- It is a condition of Defendant's supervised release that he not commit another federal, state, or local crime. It is alleged that on or around March 18, 2022, in Springfield, Massachusetts, he: (a) carried a firearm without a license; (b) carried a large capacity firearm; and (c) improperly stored a large capacity firearm, all in violation of the laws of the Commonwealth of Massachusetts.

1

- It is a condition of Defendant's supervised release that he refrain from any unlawful use of a controlled substance and that he submit to periodic drug tests.  It is alleged that, on February 8 and 15, 2022, drug tests confirmed his use of cannabis.

- It is a condition of Defendant's supervised release that he not communicate or interact with someone he knows is engaged in criminal activity and that he must not knowingly communicate with someone he knows was convicted of a felony without getting prior permission from his supervising probation officer.  It is alleged that on or around March 18, 2022, Defendant interacted with persons he knew were engaged in criminal activity or had been convicted of a felony.

- It is a condition of Defendant's supervised release that he not possess or have access to a firearm, ammunition, destructive device or dangerous weapon.  It is alleged that on or around March 18, 2022, Defendant possessed a firearm.

On March 21, 2022, on the basis of the Petition and an accompanying memorandum, the presiding District Judge issued a warrant for Defendant's arrest for violating his conditions of supervised release.  On or around March 20, 2022, Defendant was arrested in Massachusetts on state court charges.  Defendant was held in state custody with the federal arrest warrant serving as a detainer until on or around December 6, 2022, when he fell into federal custody.

Defendant had his initial appearance in this court on December 7, 2022.  The court appointed counsel.  After conferring with counsel, Defendant waived his right to an identity hearing, reserved his right to a hearing on the government's request for detention pending a final revocation hearing until his appearance in the district with jurisdiction (Vermont), and asserted his right to a preliminary hearing in this district in compliance with Fed. R. Crim P. 32.1(a)(5)(A), which provides, in pertinent part, that "if the alleged violation occurred in the district of arrest, [the magistrate judge must] conduct a preliminary hearing under Rule 32.1(b) and either: (i) transfer the person to the district that has jurisdiction, if the judge finds probable cause to believe that a violation occurred; or (ii) dismiss the proceedings and so notify the court that has jurisdiction, if the judge finds no probable cause to believe that a violation occurred …."

  II. <u>Preliminary Hearing Standard</u>

In reciting the applicable standard, the court acknowledges the helpful opinion in *United States v. Bowie*, No. 1:14-MJ-0189PAS, 2014 WL 4542974 (D.R.I. Sept. 12, 2014) authored by Magistrate Judge Patricia A. Sullivan.

> The government's burden to establish probable cause at the preliminary stage is low. … Although mere suspicion does not suffice, probable cause may be found where there is a "fair probability," based on the totality of the circumstances, that a defendant committed the [violation] charged." *United States v. Mims*, 812 F.2d 1068, 1072 (8th Cir. 1987) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)); *see United States v. Gomez*, 716 F.3d 1, 7 (1st Cir. 2013). Both circumstantial evidence and the reasonable inferences drawn from it can support a finding of probable cause. *United States v. Swope*, 542 F.3d 609, 616 (8th Cir. 2008); *United States v. Hilario*, CR No. 1:09-M-167A, 2009 WL 2913957, at *1 (D.R.I. Sept. 9, 2009). With the exception of the rules on privilege, the Federal Rules of Evidence are not applicable at preliminary hearings. Fed. R. Evid. 1101(d)(3). As a result, the probable cause finding may be based, in whole or in part, on hearsay evidence ….
>
> The Supreme Court has counselled that probable cause is a "fluid concept," turning on the evaluation of evidence in a "nontechnical, common-sense" manner. *Gates*, 462 U.S. at 232, 235-36 (1983). "It does not require the fine resolution of conflicting evidence that a reasonable-doubt or even a preponderance standard demands, and credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975). Based on this guidance, the magistrate judge's role at the preliminary hearing is simply to determine whether the government has presented sufficient evidence to establish probable cause. *United States v. Kin-Hong*, 110 F.3d 103, 120 (1st Cir. 1997); *Ross v. Sirica*, 380 F.2d 557, 560 (D.C. Cir. 1967). It is generally inappropriate for the magistrate judge to make credibility determinations, which fall within the province of the [judge] as the trier of fact. *United States v. Perez*, No. 5:14-MJ-75, 2014 WL 1725759, at *11 (S.D. Tex. Apr. 29, 2014 (at probable cause stage of proceedings, defense's credibility-focused efforts are essentially irrelevant).

*Id.* at *1.

III.    The Preliminary Hearing Evidence

A Springfield Police Department (SPD) report described events on March 18, 2022, that are the basis of the state court charges pending against Defendant (Gov. Exh. 3). At around 4:30 p.m., SPD officers conducting an investigation passed a parked gray or green Mazda with

3

Vermont license plates.  They observed Melvin Rios (Rios), who was known to them, standing near the car on the passenger side.  Officers saw that the driver of the car was Walter Jones (Jones) who was the subject of an extraditable warrant from Vermont for firearms offenses.  Rios got into the rear passenger seat of the car and it pulled into traffic.  Officers in several cars followed the Mazda, intending to arrest Jones at the first safe opportunity.

Shortly after the officers began following the Mazda, Rios leaned out of the rear passenger window, pulled out a firearm and fired approximately eleven shots at the pursuing officers.  As the Mazda drove away, officers initiated a pursuit in chaotic circumstances.  Two SPD officers, one of whom was SPD Detective Christopher Duff (Duff), wound up driving towards the Mazda in an effort to block its escape.  Duff saw a black male's arm, clothed in a black shirt, throw a firearm out of the front passenger seat window.  The officers observed where the firearm landed and it was later retrieved.  The Mazda slowed down near a housing project and three individuals left the vehicle, including Rios, a female later identified as Sashe Matos, and a then-unidentified black male with shoulder-length dreadlocks wearing a black shirt.  Matos and Rios were apprehended shortly after they ran from the Mazda; the unidentified male was not.  After three of the Mazda's occupants exited the vehicle, Jones resumed driving, trying to flee.  He quickly lost control of the vehicle, crashed, and was arrested.

Duff testified at the preliminary hearing that he first got a look at the unidentified black male in the front passenger seat when the unmarked police car in which he was a passenger pulled even with the Mazda at a red light.  He got a better look at the front seat passenger when the Mazda and the car in which Duff was a passenger wound up head-to-head during the pursuit.  Duff had spoken with Defendant and taken his name at a 2019 encounter at a murder scene.[1]  He

---

[1] The government disavowed any suggestion that Defendant was involved in this murder.

4

later observed Defendant on the same day in 2019 sitting on a bench at the police station.  On March 18, 2022, he believed he recognized Defendant as the front seat passenger who had discarded the firearm.  Before reporting this identification, he did some on-line research.  He found a photograph that had been posted to Jones' Facebook page some twenty hours earlier, showing Defendant and Jones standing next to each other (Gov. Exh. 1).  Duff reported that the black male who had been in the front seat of the Mazda was Defendant and the SPD applied for a warrant to arrest him.

On March 18, 2022, the Massachusetts State Police (MSP) were flying a helicopter in the Springfield area.  When the MSP were advised of the SPD pursuit of the Mazda, they diverted the helicopter to track the Mazda.  The government introduced a brief excerpt of a video recording from the helicopter showing that the black male who exited the Mazda at the same time as Rios had what appeared to be a cast on his right arm.  Duff testified that, when Defendant was arrested on March 20, 2022, he had a cast on his right arm.

On November 30, 2022, Defendant was arraigned in the Superior Court Department of Massachusetts Trial Court, Hampden County (in Springfield) on an indictment charging him with one count of carrying a firearm without a license in violation of Mass. Gen. Laws ch. 269, § 10(a); one count of carrying a loaded firearm without a license in violation of Mass. Gen. Laws ch. 269, § 10(n); and one count of possessing a large capacity firearm in violation of Mass. Gen. Laws ch. 269, § 10(m).

On the issue of illegal use of a controlled substance, Defendant's supervising probation officer testified that urine samples Defendant gave on February 8 and 15, 2022, tested positive for cannabis.  Defendant admitted cannabis use.

Defendant called two witnesses at the preliminary hearing. His older sister testified that she hosted a birthday party for their mother on March 18, 2022. She testified that Defendant was at her house with his girlfriend for the party, that he could not have left the house without her knowledge, and that she saw him at her house throughout the day and in the early evening on March 18, 2022. Defendant's other witness was Maleeka Drungo (Drungo), who was a passenger in the Mazda on March 18, 2022. She testified that she had known Defendant for some six years and that he was not in the Mazda on March 18, 2022. According to Drungo, she did not know the front seat passenger.

Defendant introduced two medical records, one from the Hampden County Sheriff's Department and Correctional Center, and one from UMass Memorial Health Care, that appear to confirm that Defendant had a fracture to his right forearm at least as of March 25, 2022, and, while being held at the correctional center, was advised to wear a brace on his right arm/wrist at all times except when showering (Defendant's Exh. 1 at 1-2).

    IV.    Assessment of Probable Cause as to Alleged Violations

    a.   March 18, 2022

The principal evidence on which the government relies to establish probable cause as to the alleged violations arising from the events on March 18, 2022, is Duff's identification of Defendant as the occupant of the Mazda's front passenger seat during the police pursuit. The government supplemented Duff's identification evidence with the video camera recording from the MSP helicopter showing that the unidentified male passenger in the Mazda had a cast on his arm, as did Defendant when he was arrested two days later, and the image from Page's Facebook page, showing Page and Defendant standing together less than twenty hours before the police pursuit.

At the preliminary hearing, Defendant vigorously challenged the government's case, questioning whether Duff could reliably identify Defendant from a limited interaction in 2019 and brief observations of the occupants of the Mazda during a chaotic and tense police pursuit. Defendant bolstered this attack on Duff's reliability by offering alibi evidence from a family member and the testimony of Drungo, who was in the Mazda during the police pursuit, knew Defendant, and testified that he was not in the car.

"Because probable cause is a totality-of-the-circumstances determination, courts will not ignore 'facts tending to dissipate probable cause.'" *Karamanoglu v. Town of Yarmouth*, 15 F.4th 82, 88 (1st Cir. 2021) (quoting *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023-24 (9th Cir. 2009) (citation omitted)). At the same time, the Supreme Court has directed that "the probable cause determination at the preliminary hearing is not to be based on the weighing of credibility ...." *Bowie*, 2014 WL 4542974, at *4.

Balancing these principles, the court finds that the government has satisfied its burden of demonstrating probable cause to believe that Defendant was the individual in the front passenger seat of the Mazda on March 18, 2022, who threw a firearm out the car window. *See Gates*, 462 U.S. at 231 (finding of probable cause must rest on fair probability). First, Duff testified that, in 2019, when he was a uniformed patrolman, he spoke with Defendant at a murder scene and took down his name, then had the opportunity to observe Defendant again while Defendant waited on a bench at the police station. While there is a basis in these facts for a challenge to the reliability of Duff's identification, there is a fair probability that a police officer involved in a murder investigation would accurately recall the identity of an individual he interacted with at the scene of the murder, even if briefly, then observed at the police station. On March 18, 2022, Duff had two opportunities to see the man sitting in the front passenger seat of the Mazda and believed he

7

had recognized him as Defendant.  Duff appreciated the significance of identifying an individual as a participant in events that included shooting at police officers on densely populated streets in Springfield and the illegal possession of firearms.  When Duff returned to the police station, he took steps to confirm his belief about the passenger's identity before reporting that Defendant was the individual in the front seat of the Mazda.  The picture on Page's Facebook page confirmed Defendant's association with Page, the driver of the Mazda.  Duff's identification was corroborated by the video recording from the helicopter showing the cast on the unidentified man's arm when he exited the Mazda, which is consistent with other evidence that Defendant suffered a fracture to his right forearm in late March 2022.

 Finally, this court's finding of probable cause finds further support in the fact that, in November 2022, a Hampden County grand jury found probable cause to believe that Defendant committed three offenses arising from the illegal possession of a large capacity firearm.  There is no dispute that these charges are related to the violations alleged in the Petition.

 Taken together, this evidence establishes probable cause to believe that Defendant was the man in the right front passenger seat of the Mazda on March 18, 2022.  It follows that this evidence is sufficient to establish probable cause to believe that he violated federal and/or state law; associated with individuals who were engaged in criminal conduct; and possessed a firearm, all in violation of his conditions of supervised release.  Defendant's alibi evidence from his sister and Drungo raises credibility questions that are reserved for the finder of fact, which, in this case, is the presiding District Judge who will conduct the final revocation hearing.  *See Bowie*, 2014 WL 4542974, at *4 (citing *United States v. Perez*, No. 5:14-MJ-75, 2014 WL 1725759, at *8 (S.D. Tex. Apr. 29, 2014)).  For purposes of establishing probable cause, the government's evidence is sufficient.

Defendant did not contest the evidence from his supervising probation officer that he twice tested positive for the use of cannabis and that he admitted that he had used cannabis. This is sufficient evidence to establish probable cause to believe that he violated the condition that he refrain from unlawful use of a controlled substance.

V.   Conclusion

Based on the foregoing, this court concludes that the evidence presented by the government meets the burden of establishing probable cause to believe that Defendant violated the four conditions of his supervised release as set forth in the Petition. In compliance with Fed. R. Crim. P. 32.1(a)(5)(A)(i), Defendant will be transferred to the District of Vermont for further proceedings as deemed appropriate by the district with jurisdiction.

It is so ordered.

Dated: December 28, 2022                             /s/ Katherine A. Robertson
                                                     KATHERINE A. ROBERTSON
                                                     U.S. Magistrate Judge